1
2
3
4
5
6
7
8        UNITED STATES DISTRICT COURT
9       SOUTHERN DISTRICT OF CALIFORNIA
10

11  WILLIAM PELLEGRINI, individually           Case No.:  3:17-cv-00135-CAB-(JMA)
    and on behalf of others similarly situated,
12                                             **ORDER ON MOTIONS TO DISMISS**
                                  Plaintiff,   **[Doc. Nos. 9, 10, 11]**
13
    v.
14
    HUYSSEN, INCORPORATED, a
15  California corporation, bda SEDONA
    STAFFING; TEMPRO, INC., a Delaware
16  corporation; L.A. LEASING, INC., an
    Illinois corporation; and DOES 3 through
17  100, inclusive,
18
                                  Defendants.
19

20

21       This matter comes before the Court on Defendant Huyssen Incorporated's

22  ("Huyssen') motion to dismiss [Doc. No. 9], Defendant L.A. Leasing, Inc.'s ("L.A.

23  Leasing") motion to dismiss [Doc. No. 10], and Defendant TemPro Services, Inc.'s

24  ("TemPro") motion to dismiss [Doc No. 11].  The motions have been fully briefed, and the

25  Court finds them suitable for determination on the papers submitted and without oral

26  arguments in accordance with Civil Local Rule 7.1(d)(1).  For the following reasons,

27  Defendants' motions are granted in part and denied in part.

28

                                     1

## I.     Background

On July 1, 2016, Plaintiff brought suit in the Superior Court of the State of California ("the State Court Action") against Defendant Huyssen asserting for wage and hour claims in violation of the California Labor Code, the Code of Regulations, Industrial Wage Commission ("IWC") and California's Unfair Competition Law ("UCL"). Cal Bus. & Prof Code § 17200, *et seq.*; Civil Code § 3428.  [Doc No. 1-2[1] ("the complaint").]

On August 10, 2016, Plaintiff filed a First Amended Complaint ("FAC") in the State Court Action alleging similar wage and hour claims in violation of California law.  [Doc. No. 1-3.]  On September 14, 2016, Huyssen filed its Answer to the FAC.  [Doc. NO. 1-4.]

On November 11, 2016, Plaintiff filed amended the FAC to name TemPro Services, Inc. ("TemPro") and L.A. Leasing as Defendants.  [Doc. No. 1-5.]  On December 20, 2016, Plaintiff filed a Motion for Leave to Amend the FAC [Doc. No. 1-7] that was opposed by Huyssen [Doc. No. 1-9] and ultimately granted by the Superior Court [Doc. No. 1-11].

The Second Amended Complaint ("SAC") was filed on January 13, 2017.  [Doc. No. 1-12.]  The SAC asserts that Defendants failed to compensate their employees as required by federal and California law and includes a Fair Labor Standards Act ("FLSA") claim.  Specifically, the SAC alleges Defendants Huyssen, L.A. Leasing and TemPro jointly operate a staffing company that operates under the name Sedona Staffing and/or Sedona Group.  [Doc. No. 1-12 ¶ 1.]  It alleged Defendants retained Plaintiff as an employee and required him, and others similarly situated, to comply with Defendants' uniform policies to attend and participate in meetings and telephonic communications relating to prospective assignments to Defendants clients, consult with Defendants regarding the status of assignments, provide availability to work information to Defendants, attend client and internal company interviews and orientations, and undertake

---

[1] Document numbers and page references are to those assigned by CM/ECF for the docket entry.

training and travel without receiving any compensation for these activities. [Doc. No. 1-12 ¶¶ 3-4, 23, 25-30.]

On January 25, 2017, Defendants Huyssen and L.A. Leasing removed the action to this Court pursuant to 28 U.S.C. §§ 1441(a) and 1446(a). [Doc. No. 1.] On February 13, 2017, Defendants filed three separate motions to dismiss [Doc. Nos. 9, 10, 11.] All Defendants seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), with Defendant TemPro also seeking to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2). On February 16, 2017, Plaintiff filed a combined opposition to Huyssen and L.A. Leasing's motions to dismiss [Doc. No. 16] and a separate response in opposition to TemPro's motion [Doc. No. 17.]. Defendants filed their replies. [Doc. Nos. 20, 21, 22.] In light of the commonality of arguments in the motions to dismiss, the Court will consider them together.

## II.   Legal Standard

Federal Rule of Civil Procedure 12(b)(2) allows a district court to dismiss an action for lack of personal jurisdiction. "Where defendants move to dismiss a complaint for lack of personal jurisdiction, plaintiffs bear the burden of demonstrating that jurisdiction is appropriate." *Dole Foods Co. Inc. v. Watts,* 303 F. 3d 1104, 1108 (9th Cir. 2002). "The court may consider evidence presented in affidavits to assist in its determination and may order discovery on the jurisdictional issues." *Doe v. Unocal Corp.,* 248 F.3d 915, 922 (9th Cir. 2011) (citing *Data Disc, Inc. v. Sys. Tech. Ass'n, Inc.,* 557 F.2d 1280 (9th Cir. 1977)).

When both parties support their respective positions with affidavits and the "district court acts on the defendant's motion to dismiss without holding an evidentiary hearing, the plaintiff need make only a prima facie showing of jurisdictional facts to withstand a motion to dismiss." *Id.* (citing *Ballard v. Savage,* 65 F.3d 1495, 1498 (9th Cir. 1995)). *See also Data Disc,* 557 F.2d at 1285 ("if Plaintiff's proof is limited to written materials, it is

necessary only for these materials to demonstrate facts which support a finding of jurisdiction in order to avoid a motion to dismiss.").[2]  In other words

> [plaintiff] need only demonstrate facts that if true would support jurisdiction over the defendant.  Unless directly contravened, [plaintiff's] version of the facts is taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists.

*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.,* 328 F.3d 1122, 1129 (9th Cir. 2003) (citations omitted).

A court's power to exercise personal jurisdiction over a non-resident defendant is limited by two independent constraints: the applicable state personal jurisdiction statute and constitutional principles of due process.  *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990); *see also In re W. States Wholesale Natural Gas Antitrust Litig*., 715 F.3d 716, 741 (9th Cir. 2013) ("[p]ersonal jurisdiction over a nonresident defendant is proper if permitted by a state's long-arm statute and if the exercise of that jurisdiction does not violate federal due process.") "Under California's long-arm statute, California state courts may exercise personal jurisdiction 'on any basis not inconsistent with the Constitution of this state or of the United States.'"  *Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014) (quoting Cal. Civ. Proc. Code Ann. § 410.10 (West 2004)).

Under the Due Process Clause of the Fourteenth Amendment, to exercise personal jurisdiction over an out-of-state defendant, the defendant must have "certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Goodyear Dunlop Tires Operations, S.A. v.*

---

[2] If plaintiff makes the prima facie showing it does not necessarily mean that he proceeds to trial on the merits.  "If the pleadings and other submitted materials raise issues of credibility or disputed questions of fact with regard to jurisdiction, the district court has the discretion to take evidence at a preliminary hearing in order to resolve the contested issues." *Data Disc*, 557 F.2d at 1285 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure s 1373, at pp. 714-15 (1969); 4 J. Moore, Federal Practice s 26.56(6). At p. 26-190 (1976)).  If the matter proceeds to trial, plaintiff "must still prove the jurisdictional facts at trial by a preponderance of the evidence." *Id.* at 1286 n. 2.

*Brown*, 564 U.S. 915, 923 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations omitted)).  This minimum contacts jurisdiction may be either "general or all-purpose jurisdiction," or "specific or case-linked jurisdiction."  *Id.* at 919 (citing *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414 (1984)).  "In order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'"  *Bristol-Myers Squibb Co. v. Superior Court of Cal., S.F. Cnty.*, 137 S. Ct. 1773, 1781 (2017) (quoting *Goodyear*, 564 U.S. at 919).

Under Rule 12(b)(6), a party may bring a motion to dismiss based on the failure to state a claim upon which relief may be granted.  A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025, 1031 (9th Cir. 2008).  But, a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 555).

## III.    Discussion

### A.   TempPro's Motion to Dismiss Pursuant to Rule 12(b)(2).

Defendant TempPro moves to dismiss for lack of either specific or general personal jurisdiction because it does not conduct or solicit any business in the State of California. [Doc. No. 11 at 12-13.]  Plaintiff does not dispute that TempPro lacks sufficient contacts with California to support general jurisdiction, but asserts that TempPro operates in California as Sedona Staffing and the Sedona Group and is therefore subject to specific personal jurisdiction.  [Doc. No. 17 at 10-13.]  In the alternative, Plaintiff argues that L.A. Leasing and Huyssen's contacts related to the San Diego branch should be imputed to

3:17-cv-00135-CAB-(JMA)

TemPro.  [Doc. No. 17 at 13-18.]  Since Plaintiff has effectively conceded that general jurisdiction does not exist, the Court will limit its inquiry to whether it has specific jurisdiction over TemPro.

"[S]pecific jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'"  *Goodyear Dunlop*, 564 U.S. at 919.  *See also Daimler AG*, 134 S. Ct. at 758 (the focus is on the "relationship among the defendant, the forum, and the litigation.").  "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State."  *Bristol-Myers Squibb*, 137 S. Ct. at 1781.  The Ninth Circuit uses a three-prong test to determine whether a non-resident defendant is subject to specific personal jurisdiction: (1) [t]he non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).  The plaintiff bears the burden of satisfying the first two requirements and if successfully met, the "burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable."  *Id.* at 801-802.

Here, TemPro is a Delaware corporation with its principal place of business in Moline, Illinois.  [Doc. No. 11-2 at ¶ 2.]  TemPro is wholly owned by John Enterprises Limited an Illinois corporation.  [Doc. No. 13.]  TemPro asserts that with one exception, TemPro has not had any California employees since December 31, 2000.  [Doc. No. 11-2 at ¶ 2.]  TemPro declares that it does not have any offices in California, does not have any bank account in California, is not licensed to do business in California, has no agent for service of process in California, does not lease or own any real estate in California, and does not have any contracts with any businesses based in California.  [*Id.* at ¶¶ 6-11.]

3:17-cv-00135-CAB-(JMA)

1   Further, TemPro attests that Plaintiff is not and never has been employed by TemPro and

2   that it does not have any ownership interest in L.A. Leasing or Huyssen and L.A. Leasing

3   and Huyssen do not have an ownership interest in TemPro.  [*Id.* at ¶¶ 5, 12.]

4        In opposition, Plaintiff alleges that jurisdiction exists in California because TemPro

5   operates in California as Sedona Staffing and the Sedona Group.  Plaintiff asserts that

6   specific jurisdiction is warranted because (1) through these entities TemPro purposefully

7   avails itself in California by openly recruiting agents online and maintaining a staffing

8   office in San Diego; (2) the action arises out of TemPro's activities in California because

9   Plaintiff's claims are derived from his employment relationship with the Sedona Group

10  that was formed in the San Diego branch office; and (3) exercise of jurisdiction over

11  TemPro would be reasonable.  [Doc. No. 17 at 10-13.]  Defendant TemPro summarily

12  dismisses Plaintiff's argument that The Sedona Group and TemPro are one and the same,

13  asserting that the absence of any Secretary of State Corporate Documents is evidence that

14  The Sedona Group is not a corporate entity.

15       In support of his argument, Plaintiff offers a declaration by Lacy Wells, an associate

16  with the law firm of Nicholas & Tomasevic, LLP, counsel of record for Plaintiff, and a

17  number of accompanying exhibits[3].  [Doc. No. 17-5 at ¶ 1.]  Plaintiff posits that the exhibits

18  demonstrate that: (1) TemPro's principal place of business is at 612 Valley View Drive,

19  Moline, IL; (2) the Sedona Compass website[4] is registered at the same mailing address as

20  TemPro; (3) a billboard identifying the Sedona Group is located at the 612 Valley View

21

22

23  [3] The accompanying exhibits were: 1) a copy of the Illinois Secretary of State Corporate Detail Report on
    TemPro (Exhibit E); (2) internet search results for the Sedona Group (Exhibit F); (3) a Google maps image
24  of TemPro's principal location (Exhibit G); a printout of Michelle Kahley's LinkedIn profile (Exhibit H);
    a time line of the Sedona Group (Exhibit I); a copy of the Illinois Secretary of State Corporate Detail
25  Report on L.A. Leasing (Exhibit N); copies of pages from the Sedona Group's website including Sedona
    Staffing Partner Opportunities, Total Workforce Management Solutions, Total Workforce Management,
26  Sedona Staffing Locations – San Diego, CA, About Us (Exhibits J, K, L, M, P); a copy of Ms. Kahley's
    LinkedIn profile; a copy of an article titled "After 25 years, The Sedona Group rocks on" (Exhibit R).
27

28  [4] The Sedona Compass website/database which used by Plaintiff's initial point of contact at the Sedona
    Staffing Office is operated and registered to the Sedona Group.

Drive address; (4) Rick John is the President of the Sedona Group and TemPro; (5) Ms. Kahley's LinkedIn profile indicates that she is the "Director of Operations at The Sedona Group"; (5) In 1986 TemPro was formed by the Willard Brothers, which eventually becomes The Sedona Group, encompassing three divisions – Sedona Staffing Services, Sedona Technologies and Sedona Medical; (6) In 1998, TemPro rebrands as Sedona Staffing Services.

### 1.  Purposeful availment

"Purposeful availment analysis examines whether the defendant's contacts with the forum are attributable to his own actions or are solely the actions of the plaintiff." *Sinatra v. National Enquirer*, 854 F.2d 1191, 1195 (9th Cir. 1988).  To successfully demonstrate this, Plaintiff must show that TemPro "engage[d] in some form of affirmative conduct allowing or promoting the transaction of business within the forum state." *Gray & Co. v. Firstenberg Machinery Co.,* 913 F.2d 758, 760 (9th Cir. 1990) (citation omitted).  In contract cases the inquiry typically focuses on "whether a defendant 'purposefully avails itself of the privilege of conducting activities' or 'consummates a transaction' in the forum, focusing on activities such as delivering goods or executing a contract." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, at 1206 (9th Cir. 2006) (citing *Schwarzenegger,* 374 F.3d at 802).

The complaint alleges that TemPro dba Sedona Staffing and/or Sedona Group along with the other Defendants, jointly operates a staffing company that failed to compensate their employees, including Plaintiff, as required by federal and California law.  [Doc. No. 1-12 ¶ 1.]  Further, Plaintiff alleges that TemPro, operating as The Sedona Group, openly recruits agents like Huyssen to open up new staffing office locations on its website.  [*See* Doc. No. 17-5 at ¶ 8 and Ex. J.]  Additionally, Plaintiff argues that TemPro's purposeful availment is demonstrated though the websites of The Sedona Group and Sedona Staffing Corporate.  Plaintiff contends that links on The Sedona Group website transfer users to the website of Sedona Staffing Corporate and users can select office locations from the Sedona Staffing Corporate Site.  [*See Id*. at ¶ 9, Exs. K, L, M.]  According to Plaintiff, the

Clairemont Mesa Blvd Location listed as an office location on the Sedona Staffing Corporate website is where Plaintiff visited and was hired. [*See Id.* at ¶ 9, Exs. K, L, M; Doc. No. 17-1 at ¶ 2, Ex. A.]  Plaintiff also asserts that San Diego and Carlsbad, two separate California locations, are listed on the Sedona Staffing Corporate's website. [*See* Wells Decl. ¶ 9.]  In response, Defendant TemPro states "Plaintiff's mantra throughout his Response that 'TemPro operates as the Sedona Group' is conclusory unsupported by the facts, and does not make it so." [Doc. No. 22 at 7:3-4.]  The Court disagrees.  Plaintiff has submitted an affidavit and accompanying exhibits that allege that TemPro operates as The Sedona Group and Sedona Staffing, that The Sedona Group and Sedona Staffing have offices in California though which Plaintiff, a California resident, sought temporary employment, and The Sedona Group recruits partners within California.  Moreover, in deciding whether Plaintiff has established his prima facie case for personal jurisdiction, the Court resolves conflicts between facts contained in the parties' affidavits in Plaintiff's favor.  *Harris Rutsky,* 328 F.3d at 1129.  Accordingly, the Court finds that TemPro, operating as Sedona Staffing and The Sedona Group, purposefully avails itself of the privilege of conducting business in California.

### 2.   Relatedness of the Claim and Contacts

The second prong of the *Schwarzenegger* analysis requires the court to determine whether the claim arises from the defendant's forum-related activities. *See Schwarzenegger*, 374 F.3d at 801-802.  Courts make this determination by "apply[ing] a but for test." *See Menken v. Emm,* 503 F.3d 1050, 1058 (9th Cir. 2007) (plaintiff would not have suffered an injury "but for" defendant's forum-related conduct).

The Court concludes that but for TemPro's, operating as The Sedona Group and/or Sedona Staffing, contacts with California Plaintiff's claims against it would not have arisen.  Plaintiff's claims arise out of an employment relationship that was allegedly formed in The Sedona Group's San Diego branch office. [Doc. No. 17-1 at ¶ 9; Doc. No. 17-5 at¶ 9, Ex. M.]  Furthermore, it is alleged that The Sedona Group owns the Sedona Compass website that catalogs temporary workers' information, including Plaintiff's, in California.

9

[Wells Decl. ¶¶ 2, 4, Exs. F, M.]  Given that Defendant TemPro does not dispute this, the Court concludes that Plaintiff has carried his burden on the issue.  *See Harris Rutsky*, 328 F.3d at 1129.

### 3.   Reasonableness

The third part of the *Schwarzenegger* test requires a broad inquiry into the overall reasonableness and fairness of exercising personal jurisdiction.  *Schwarzenegger*, 374 F.3d at 801-802.  The burden is on defendants to "present a compelling case" that exercising personal jurisdiction over it would be unreasonable.  *Burger King,* 471 U.S. at 476-78.  In making this inquiry the court considers: (1) the extent of purposeful interjection into the forum state; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.  *Menken,* 503 F.3d at 1058; *Burger King*, 471 U.S. at 476-77.

In this case, the first factor as to whether Defendant TemPro has purposefully injected itself into California affairs is directly disputed by the parties but, as discussed *supra*, the Court finds that TemPro has purposefully availed itself in California.  Turning to the second factor, Defendant TemPro contends that litigating the case in California would constitute a burden on TemPro as it has no offices or employees in California.  Admittedly, traveling to California to litigate this matter will create some burden due to travel and other expenses, "with the advances in transportation and telecommunication and the increasing interstate practice of law, any burden is substantially less than in days past." *Menken,* 503 F.3d at 1060 (quoting *CE Distrib., LLC v. New Sensor Corp.*, 380 F.3d 1107, 1112 (9th Cir. 2004)).  Although litigating here would not be unduly burdensome, this factor weighs slightly in favor of TemPro.  As to the third factor, Defendant TemPro concedes that there is no conflict of sovereignty, therefore this factor favors Plaintiff.  *See*

*Menken*, 503 F.3d at 1060 (finding third factor weighed in favor of the plaintiff because the parties agreed that a conflict of sovereignty did not exist).

Similarly, assuming as true that TemPro operates as The Sedona Group and/or Sedona Staffing, the fourth factor weighs in favor of exercising jurisdiction over Defendant. Plaintiff is a California resident, who allegedly was employed by The Sedona Group and/or Sedona Staffing, performed work on its behalf within California, and did not get paid in accordance with the California Labor Code. *See Burger King,* 471 U.S at 473 ("A State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out of state actors.") The Court determines the fifth factor to be neutral because based on the current record, it is difficult to definitively determine which would be the most efficient forum for resolution of this dispute. The sixth factor weighs in Plaintiff's favor as it will be surely far easier for Plaintiff to litigate this matter in California, the forum state where he resides. As to the seventh factor, Defendant TemPro does not offer an alternative forum, instead appearing to take the position that since there is no viable controversy that involves TemPro no alternative forum exists. Therefore this final factor weighs in favor of Plaintiff.

After balancing the seven factors, the Court finds that Defendant TemPro has failed to present a compelling case that the Court's exercise of jurisdiction would be unreasonable.

In light of above, the Court concludes that Plaintiff has met his burden and demonstrated facts that, if true, would support jurisdiction over Defendant TemPro in order to survive the motion to dismiss. *See, e.g., Data Disc*, 557 F.2d at 1285. ("if Plaintiff's proof is limited to written materials, it is necessary only for these materials to demonstrate facts which support a finding of jurisdiction in order to avoid a motion to dismiss.").[5]

---

[5] In light of this holding, the Court declines to address the alternative alter ego and agency arguments Plaintiff made in support of his position that this Court should exercise personal jurisdiction over TemPro.

Accordingly, Defendant TemPro's Motion to Dismiss for lack of personal jurisdiction is **DENIED.**

### B.   Defendants' motions to dismiss pursuant to Rule 12(b)(6)

Defendants Huyssen and L.A. Leasing both move under Federal Rule of Civil Procedure 12(b)(6) to dismiss the SAC in its entirety.  [Doc. Nos. 10, 11.]  Defendant TemPro joins in and incorporates by reference Huyssen and L.A. Leasing's motions.  [Doc. Nos. 11, 11-1 at 19.]  The motions assert multiple grounds as to why each of Plaintiff's causes of action fail to state claims upon which relief can be granted.  Because the Rule 12(b)(6) arguments made by each Defendant individually are substantially similar, if not identical, the Court will consider them together.

The Court will address the FLSA claim first before turning to each state law cause of action.

### 1.   Sixth Cause of Action for Failure to Pay Minimum Wages under the Fair Labor Standards Act ("FLSA")

Defendants argue that Plaintiff's sixth claim is barred by the applicable statute of limitations, and does not contain sufficient allegations of underlying facts to allow Defendants to defend themselves effectively.  [Doc. No 9-1 at 14-24; Doc. No. 10-1 at 13-22.]

Generally an action under the FLSA must be commenced within two years after the cause of action has accrued[6], but actions arising out of willful violations have a three year limitations period.   29 U.S.C. § 255(a).  For purposes of determining the statute of limitations under the FLSA an action:

> Shall be considered to be commenced on the date when the complaint is filed; except in the case of a collective or class action under the [FLSA] it shall be considered to be commenced in the case of any individual claimant-

---

[6] "A new cause of action accrues at each payday immediately following the work period for which compensation is owed."  *Batiz v. Am. Commercial Sec. Servs.,* 776 F. Supp. 2d 1087, 1096 (C.D. Cal. 2011) (citing *O'Donnell v. Vencor Inc.,* 466 F.3d 1104, 1113 (9th Cir. 2006).

3:17-cv-00135-CAB-(JMA)

a)     on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such a date in the court in which the action is brought; or (b) if such written consent was not so filed or if his name did not so appear – on the subsequent date on which such written consent is filed in the court in which the action was commenced.

29 U.S.C. §256(a)-(b).

In this case, the original complaint was filed on July 1, 2016, and the FLSA claim and Plaintiff's written consent were filed in this Court on January 13, 2017.  Defendants argue that Plaintiff's FLSA claim is time barred because it began accruing in September 2013 and Plaintiff did not file the consent form until January 13, 2017, more than three years later.  In support of this position, Defendants rely on cases from outside the Ninth Circuit that are distinguishable from the case at bar.[7]  [Doc. Nos. 9-1 at 15-19; 10-1 at 14-18.]

---

[7] In *Local 589, Amalgamated Transit Union v. Mass. Bay Transp. Authority*, plaintiffs argued unsuccessfully for leave to amend to preserve the rights and claims of individuals against the applicable statute of limitations because of the time consuming nature of class certification. *Local 589*, Civil Action No. 13-cv-11455-ADB, 2015 WL 7428537 (D. Mass. Nov. 20, 2015).  The court denied Plaintiffs' motion to amend the complaint to add an additional 1,600 employees on the grounds of plaintiffs' undue delay and the prejudice defendant would face if 1,600 plaintiffs were added so late in the case.  The court explained that: 1) plaintiffs had waited two-and-a-half years before filing the motion; (2) a previous motion to amend was granted; (3) summary judgment motions had been briefed and decided; (4) discovery was closed; (5) and class certification had been denied three times.  *Id.* at * 3.  District Judge Burroughs found that amending the complaint would have no effect of the statute of limitations because plaintiffs had had over two years to file consent forms and over sixteen hundred forms had been filed, noting that "[u]nder the FLSA, what matters for statute of limitations purposes is when an individual's consent form is filed – not when the class is certified and not when individuals are added as named plaintiffs."  *Id.*

In *Harkins v. Riverboat Serv., Inc.*, the court granted defendants' motion for partial summary judgment and motion to strike and bar the proposed persons as plaintiffs.  No. 99 C 123, 2002 WL 32406581 (N.D. Ill. May 17, 2002).  After analyzing the case law regarding when an FLSA collective action is deemed commenced the court reasoned that "[s]ection 256 is expressly conjunctive, it requires that plaintiffs in a collective action, including the named plaintiffs, file a written consent and that suit is not 'commenced' for statute of limitations purposes until such consent is filed." (quoting *Salazar v. Brown*, No. G87-961, 1996 WL 302673, at *10 (W.D. Mich. Apr. 9, 1996)).  *Id.* at *2.  Concluding that this language mandates that "written consents not filed with the complaint do not relate back" the court looked to the employment dates of the three named plaintiffs who had filed the requisite written consents in order to calculate when the statute of limitations expired.  *Id.* at * 3.

1    Regarding the statute of limitations, Plaintiff argues that the FLSA cause of action

2    relates back to the earlier filed complaint when the amending party satisfies Federal Rule

3    of Civil Procedure 15.  Defendants counter that the commencement of the FLSA claim

4    does not relate back to the filing dates of the earlier complaints.  [Doc. Nos. 9-1 at 18-19;

5    10-1 at 17-19.]  The Court agrees with Plaintiff.  In response, Defendants rely on cases

6    from the Second Circuit that are not binding on this Court and involve circumstances

7    markedly different from the case at bar.[8]

8        "An otherwise time-barred claim in an amended pleading is deemed timely if it

9    relates back to the date of a timely original pleading."  *ASARCO, LLC v. Union Pac. R.*

10   *Co.*, 765 F.3d 999, 1004 (9th Cir. 2014).  "Rule 15(c) of the Federal Rules of Civil

11   Procedure governs when an amended pleading 'relates back' to the date of a timely filed

12   original pleading and is thus itself timely even though it was filed outside an applicable

13   statute of limitations."  *Krupski v. Costa Crociere S.p.A*, 560 U.S. 538, 541 (2010).  Rule

14   15(c) provides that an amendment to a pleading relates back to the date of the original

15   pleading when:

16

17   _____

18   [8] In *Lopez v. Setauket Car Wash & Detail Ctr.*, the magistrate judge recommended that plaintiffs be

19   allowed to amend the complaint and add an additional four proposed named plaintiffs.  No. CV 12-6324
     (LDW) (ARL), 2014 WL 7506801, at * 3 (E.D.N.Y. Oct. 2, 2014).   Further, the magistrate judge

20   recommended that plaintiffs' request to have the opt-in plaintiffs' claims relate back to the date of the
     original complaint be denied, viewing Plaintiffs decision to wait to amend until after the court's decision

21   on the motion to conditionally certify the class, as a strategy to make "an end-around the FLSA statute of
     limitations in order to expand the scope of damages."  *Id.* at 4.  The district court judge adopted in part

22   and modified in part Judge Lindsay's R & R, but the issue of whether the FLSA claims could relate back
     was no longer before the court because "in their objections, [p]laintiffs agree[d] that the FLSA claims [of

23   the additional opt in named plaintiffs] do not relate back and that those claims are tolled only upon the
     filing of each Plaintiff's written consent."  *Lopez*, 2015 WL 136336 at *3.

24        Similarly, in *Perkins v. S. New England Tel. Co.*, plaintiff filed a motion for relation back of newly

25   named plaintiffs FLSA claims in a representative capacity.  Civil Action No. 3:07-cv-967 (JCH), 2009
     WL 3754097 (D. Conn. Nov. 4, 2009).  The court found that, although each plaintiff's individual FLSA

26   claims did not commence until the date that their consent form was filed with the court, the newly added
     parties could act as representatives of the collective action prior to the filing of their individual consent

27   forms because "[t]he language of section 256(b) clearly contemplates a situation in which a named
     plaintiff does not file the consent form until after the complaint is filed . . . section 256(b) makes clear that

28   the filing of consent forms can be independent of the filing of a complaint."  *Id.* at 3.

(A)     the law that provides the applicable statute of limitations allows relation back;

(B)     the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading.

Fed. R. Civ. P. 15(c)(1)(A)-(B).

While the relation back doctrine of Rule 15(c) is to be applied liberally "there must nonetheless be some basis for application of the doctrine." *Percy v. S.F. Gen. Hosp.*, 841 F.2d 975, 980 (9th Cir. 1988). Therefore, courts took to whether "the original and amended pleadings [] share a common core of operative facts so that the adverse party has fair notice of the transaction, occurrence, or conduct called into question." *ASARCO*, 765 F.3d at 1004 (quoting *Martell v. Trilogy Ltd.*, 872 F.2d 322, 325 (9th Cir. 1989)). "So long as a party is notified of litigation concerning a particular transaction or occurrence, that party has been given all the notice that Rule 15(c) requires." *ASARCO*, 765 F.3d at 1006.

Here, Plaintiff first asserted his FLSA claim on January 13, 2017. [Doc. No. 1-12.] Plaintiff's written opt-in consent form to become a party plaintiff was dated December 21, 2016. [Doc. No. 1-12, Ex. A at 27.] The first and second iterations of Plaintiff's complaint asserted wage and hour claims based on Plaintiff's employment by Sedona Staffing in violation of California Labor laws. The SAC alleges that Plaintiff sought employment through Defendants from approximately September 2013 to April 2014 and that "during the relevant periods, Defendants maintained and enforced a uniform policy by which they regularly and consistently violated the FLSA." [Doc. No. 1-12 at ¶¶ 8, 31, 37.] Therefore, the Court finds that all of the claims spring from the same alleged core facts regarding Plaintiff's employment and will likely be proved by the same kind of evidence. *See O'Donnell v. Vencor Inc.,* 466 F.3d 1104, 1112 (9th Cir. 2006) (allowing relation back "[b]ecause the allegations and type of evidence necessary for [Plaintiff] to succeed on her EPA claims are identical to what she alleged in her [earlier] complaint"); *Martell*, 872 F.2d 322, 325-26 (finding that amended complaint related back where amended complaint added new theory of recovery based on facts alleged in original complaint).

However, L.A. Leasing and TemPro were not added as parties to this action until Plaintiff filed two Amendments to the complaint on November 11, 2016. The Court therefore finds that the earliest "they were on fair notice of the transaction, occurrence, or conduct called into question" was November 11, 2016. *ASARCO*, 765 F.3d at 1004. *See also Percy*, 841 F.2d at 980 (noting that relation back doctrine has been applied when "defendant was given adequate notice by the prior pleading of the facts that caused the injury alleged in the amended pleading."). Accordingly, the Court concludes that as to Huyssen, the January 13, 2017 amendment adding the FLSA claim relates back to the original complaint filed on July 1, 2016. As to L.A. Leasing and TemPro, the Court concludes the FLSA claim relates back to the filing of the amendment to the First Amended Complaint on November 11, 2016 when they were named as Defendants.

The Court also rejects Defendants argument that Plaintiff has not plausibly alleged a willful violation. "A violation of the FLSA is willful if the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA." *Chao v. A-One Medical Services,* 346 F.3d 908, 918 (9th Cir. 2003). Here, the SAC alleges that Defendants knowingly, willfully, and intentionally" failed to compensate Plaintiff. [Doc. No. 1-12 at ¶¶ 105, 106.] Further, the SAC also contains allegations that Defendants dictated and enforced common employment policies, decided to adopt and implement policies in violation of the FLSA, directly or indirectly exercised control over Plaintiff's wages and regularly and consistently violated the Act. [Doc. No. 1-12 at ¶¶ 3, 13, 20, 22, 37.] These allegations sufficiently plead a willful violation. *See Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 903 (9th Cir. 2013) (an allegation that defendants violations were "deliberate, intentional, and willful" are sufficient to survive a motion to dismiss because "[a]t the pleading stage, a plaintiff need not allege willfulness with specificity.") (citing Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge and other conditions of a person's mind may be alleged generally.")). *See also Von Saher v. Norton Simon Museum of Art at Pasadena,* 592 F.3d 954, 969 (9th Cir. 2010) (under Rule 12(b)(6) untimely claims may be dismissed "only when the running of the statute [of limitations] is apparent on the face of

the complaint.")  Thus, applying the three year statute of limitations to the FLSA claims, the Court concludes that as to Huyssen the alleged acts occurring between September 2013 and April 2014 are not barred by the statute of limitations.  Further, the Court concludes that as to L.A. Leasing and TemPro, the acts alleged to have occurred between November 11, 2013 and April 2014 are not time barred.[9]

Finally, Defendants assert that Plaintiff's FLSA claim contains bare allegations not supported by sufficient facts.  Defendants argue that Plaintiff's failure to allege that he did not receive a minimum wage for the hours worked during the week he had interviews or was attending orientations warrants dismissal of this claim.  In support of their position, Defendants rely on cases where plaintiff was asserting a claim for failure to pay overtime wages, but here Plaintiff is not asserting a failure to pay overtime, he is asserting that he was not paid for time spent conducting a variety of work related activities and work related travel time.

"Where an individual exercises control over the nature and structure of the employment relationship, or economic control over the relationship, that individual is an employer within the meaning of the Act, and is subject to liability."  *Lambert v. Ackerley*, 180 F.3d 997, 1012 (9th Cir. 1999) (internal quotation marks and citation omitted).  The FLSA requires employers to pay employees for all "work" they perform."  29 U.S.C. §§ 206-207.[10]  Exceptions to the compensable work requirement of the FLSA are laid out in the Portal-to-Portal Act.  *See* 29 U.S.C. § 254(a).[11]

---

[9] Because the Court is not dismissing Plaintiff's FLSA claim at this time, it need not address the equitable tolling arguments.

[10] "The nature of the employees' duties is a question of fact, and the application of the FLSA to those duties is a question of law."  *Ballaris v. Wacker Siltronic Corp*., 370 F.3d 901, 910 (9th Cir. 2004).

[11] Activities excluded from the FLSA coverage are: (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and (2) activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

"In order to determine whether Plaintiff "has stated a plausible claim under the FLSA, [the court] look[s] to Rule 8 of the Federal Rules of Civil Procedure." *Landers v. Quality Communications, Inc.*, 771 F.3d 638, 640 (9th Cir. 2014).   The Ninth Circuit has adopted a three step approach to establish whether an activity is compensable within the definitions of the FLSA and Portal-to-Portal Act. *See Bamonte v. City of Mesa*, 598 F.3d 1217, 1224 (9th Cir. 2010).   This approach requires the Court to consider: "(1) whether the activity constituted "work," (2) whether the activity was an "integral and indispensable" duty, and (3) whether the activity was *de minimis*." *Id.*   "Work" is defined as "physical or mental exertion ... controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer." *Alvarez v IBP, Inc.*, 339 F.3d 894, 902 (9th Cir. 2003) (italics added).   An activity is "integral and indispensable" if that activity is "necessary to the principal work performed and done for the benefit of the employer." *Id.* (citing *Barrentine v. Arkansas–Best Freight Systems, Inc.*, 750 F.2d 47, 50 (8th Cir.1984)). An activity is *de minimis* "when the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours [] such trifles may be disregarded for split-second absurdities are not justified by the actualities or working conditions or by the policy of the FLSA." *Id.* at 903 (quoting *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 692 (1946)) (internal quotation marks and changes omitted).   "An important factor in determining whether a claim is *de minimis* is the amount of daily time spent on the additional work." *Lindow v. U.S.*, 738 F.2d 1057, 1062 (9th Cir. 1983).

Here, the SAC alleges that Defendants, jointly, required Plaintiff and his coworkers to participate and perform numerous work related activities including "attend and participate in meetings and telephonic communications relating to the prospective assignments to Defendants' clients, consult with Defendants regarding the status of

---

29 U.S.C. § 254(a).  *See, e.g., Abbe v. City of San Diego*, Nos. 05CV1629 DMS (JMA), 06CV0538 DMS (JMA), 2007 WL 4146696, at *9 (S.D. Cal. Nov. 9, 2007) (citing 29 C.F.R. § 790.7(c)) ("Walking and travel time is compensable if it takes the employee from one principle activity to another.")

assignments, provide information to Defendants regarding their availability, attend interviews with Defendants' clients, undertake training as well as undertake travel and miscellaneous tasks related to each of the aforementioned activities." [Doc. No. 1-12 at ¶ 23.] Further, it is alleged that Defendants required their employees to participate in internal interviews, attend client orientations and/or interviews, participate in client specific training, complete tasks pertaining to background checks as required by Defendants' clients, "such as the execution of forms and the taking of fingerprints, having photographs taken for clients' internal records and for identification badges, review of the clients' safety policies and execution of job-related documents" and undergo skills testing when placed on temporary assignment to a client. [*Id.* at ¶¶ 25, 26, 28, 29.] As alleged in the complaint, the requirements regarding placement at Defendants' client's offices were set forth in Defendants' Policy Documents, including the training and information materials Defendants' provided to their employees, Defendants' code of conduct and Defendants' employee handbook. [*Id.* at ¶¶ 22.]

Plaintiff has sufficiently alleged an employment relationship. *See Helm v. Alderwoods*, 696 F. Supp. 2d 1057, 1074 (N.D. Cal. 2009) (allegations that each of the defendants controlled the manner in which plaintiff provided services and had the authority to terminate plaintiffs' employment were sufficient to survive a motion to dismiss). Further, the activities Plaintiff asserts he was not compensated for involved physical or mental exertion, were required and controlled by his employer, and benefitted his employer. *Alvarez,* 339 F.3d at 902. In addition, the activities alleged presumptively benefitted Defendants because their performance was required by Defendants and their clients. *Id.* As to the whether these activities were *de minimis*, while the complaint is silent on the time actually spent, the Court infers for the purpose of the motion to dismiss that any interviews, meetings and training Plaintiff attended would have taken more than a few seconds or minutes. *Lindow*, 738 F.2d at 1062-63 (in determining whether a claim is *de minimis* "common sense must be applied to the facts of each case" and the court "will consider the size of the aggregate claim" because "[c]ourts have granted relief for claims

that might have been minimal on a daily basis but, when aggregated, amounted to a substantial claim.") (collecting cases).

Thus, viewed as claim for failure to pay wages for compensable time, the Court finds that Plaintiff has adequately alleged that Defendants failed to pay him and other members of the proposed class for work and travel they performed on Defendants behalf. Consequently, the Court **DENIES** Defendants' motions to dismiss the FLSA Claim.

> 2. First Cause of Action for Failure and Refusal to Pay Agreed Upon Wages

Defendants assert there is no private right of action under California Labor Code section 223 and as a result this cause of action should be dismissed. [Doc. No. 9-1 at 24; Doc No. 10-1 at 22.]

It is indeed true that section 223 of the code does not create a private cause of action. The provision states "[w]here any statute or contract requires an employer to maintain [a] designated wage scale, it shall be unlawful to secretly pay a lower wage while purporting to pay the wage designated by statute or by contract." CAL. LAB. CODE § 223.  *See Calop Business Systems, Inc. v. City of L.A.*, 984 F. Supp. 2d 981, 1015 (C. D. Cal. 2013) (section 223 of the California Labor Code does not create a private cause of action, "rather, anyone who violates the statute is guilty of a misdemeanor and may be assessed civil penalties collected by the California Labor Commissioner.").  But, Plaintiff has brought his failure and refusal to pay agreed upon wages claim under other portions of the California Labor Code, including sections 201, 202, 203, 204, 218, and 1194.

While some of the provisions under which Plaintiff has brought this claim allow for a private cause of action, others do not.  For example, sections 201-203 and 218 contemplate a private right of action either on their face or through enforcement of other sections of the Labor Code.  *See Johnson v. Hewlett-Packard Co.,* 809 F. Supp. 2d 1114, 1135-37 (N.D. Cal. 2011) (reviewing various sections of the California Labor Code to determine which causes of action can be brought as private causes of action).  *See also Kamar v. RadioShack Corp.*, No CV 07-2252 AHM (AJWx), 2008 WL 2229166, at *2 n.3

(C.D. Cal. May 15, 2008) (defendant did not dispute "that a private right of action exists to bring claims for unpaid wages and overtime failure to timely pay wages upon discharge, pursuant to Labor Code sections 201, 202 and 203. . . ."); *Guess v. U.S. Bancorp,* No. C 06-7535 JF (RS), 2007 WL 1345194, at *3 (N.D. Cal. May 8, 2007) ("a number of California appellate decisions have cited § 218 for the proposition that wage claimants have a direct right of action to seek unpaid wages.") (citations omitted).

Similar to section 223, section 204 of the California Labor Code does not provide for a private cause of action. *See Singer v. Becton, Dickinson and Co.*, 2008 WL 2899825, at * 3 (S.D. Cal. July 25, 2008) (the only remedy for failure to comply with section 204 is a civil penalty under section 210 because "section 204 does not provide for the payment of any wages nor create any substantive right to wages."). Likewise, section 221 does not, on its face, provide an express private remedy to enforce its provisions and "there is nothing to indicate that the legislature intended to create a private right of action to remedy violations of section[] 221." *Gunawan v. Howroyd-Wright Employment Agency*, 997 F. Supp. 2d, 1058 (C.D. Cal. 2014).[12]

Accordingly, the Court **DENIES** Defendants' motions to dismiss this cause of action in its entirety, but limits Plaintiff's claim to the private causes of action permitted by the California Labor Code.

###### 3.   Second Cause of Action for Failure to Pay Minimum Wages Under California Law

Defendants argue for dismissal of this cause of action on the grounds that compensation for meetings and trainings related to prospective employment is not required under California Law. [Doc. No. 9-1 at 24-25; Doc No. 10-1 at 23-24.] Defendants posit

---

[12] That is not to say that aggrieved employees cannot bring a civil action to enforce these sections of the Labor Code, it just requires such suits be brought under the Private Attorney General Act of 2004 ("PAGA"). *See Calop Bus. Sys., Inc. v. City of L.A.*, 984 F. Supp. 2d 981, 1015 (C.D. Cal. 2013) ("PAGA provides a private right of action when a Labor Code section provides for a [civil] penalty.") (quoting *Johnson*, 809 F. Supp. 2d at 1137).

that case law supports their proposition that Plaintiff is not entitled to payment of the minimum wage for time spent interviewing for prospective employment, because at that time, she as not an employee of the agency performing compensable work. [*Id*.]   In support, Defendants rely on the central district case *Gunawan* and *Sullivan v. Kelly Services, Inc.*, No. C 08-3893 CW, 2009 WL 3353300, at *4-6 (N.D. Cal. Oct. 16, 2009). While both cases cited by Defendants involved similar fact patterns to the case at bar they involved summary judgment motions not motions to dismiss and reached opposite conclusions.

In *Gunawan*, the court was presented with uncontroverted facts that the interviews plaintiff sought compensation for were conducted before plaintiff had entered into an employment relationship with the staffing agency.  *Gunawan*, 997 F. Supp. 2d at 1061. Following a pre-placement interview with the staffing agency's client and the client's affirmation of its desire for the potential employee to work for them, the staffing agency then entered into an employment relationship with plaintiff.  *Id.*  The court considered the level of control the staffing agency exercised over plaintiff and concluded that it was insufficient, noting that had plaintiff wanted to she could have simply declined the interview, refused the staffing agency's placement service and sought to secure direct employment with the client. *Id*. at 1064.  In light of these facts, the court found that plaintiff was not entitled to compensation from the staffing agency for the time she spent interviewing with the agency's client because "at the time of the interview, she did not have a compensable relationship" with the agency. *Id.* at 1063.

As to *Sullivan*, the Court finds it to be more analogous to the case at bar, but is mindful that it does not stand for as broad a proposition as Defendants suggest.  Similar to here, before beginning employment with one of defendant's customers, plaintiff applied for employment with defendant. *Sullivan,* 2009 WL 3353300, at *1-2.  Subsequently, defendant arranged and controlled the interviews between plaintiff and its customers, with defendant discouraging direct contact between the two.  *Id.*  At the summary judgment stage, the *Sullivan* court concluded that because of the high level of control the temporary

staffing agency had over plaintiff's interviews with their customers, the "time spent interviewing with Defendant's customers was compensable hours worked."[13]  *Id.* at *5. However, the court's holding was made in the context of there being a pre-existing employment relationship between the plaintiff and the staffing agency at the time of the interviews in question.[14]

Here, Plaintiff alleges that "Defendants hired and entered into an employment relationship with the temporary services employees they employed and thereafter required them to attend and participate in meetings and telephonic communications relating to the prospective assignments to Defendants' clients, consult with Defendants regarding the status of assignments, provide information to Defendants regarding their availability, attend interviews with Defendants' clients, as well as undertake travel and miscellaneous tasks related to each of the aforementioned activities." [Doc. No. 12-1 at ¶ 23.] Plaintiff

---

[13]  In reaching this conclusion the court considered the following facts: "[p]lantiff was subject to Defendant's control during the time she attended the customer interviews. Defendant controls all communications with its customers regarding potential assignments for temporary employees, outside of the interview itself. Defendant decides which of its temporary employees to send on an interview. Defendant then sends the customer a résumé with Defendant's name on it. Defendant removes the temporary employee's contact information from the résumé and replaces it with its own to ensure that its customers can only contact it about the placement. Further, Defendant arranges the interview and restricts a temporary employee's communication with the customer so that only Defendant can arrange the time, place and date of the interview. If a temporary employee is running late to an interview, he or she must contact Defendant to relay that information to the customer. After interviews, Defendant controls all follow-up communication with the customer. Employees are not allowed to have any direct communication with the customer about the interview, salary or any terms of a possible assignment offer." *Sullivan,* 2009 WL 3353300, at *4.

[14]  The court determined that based on the application for employment plaintiff signed, her employment relationship with the temping agency defendant began on the "first day of her first temporary assignment with Defendant's customer."  *Sullivan,* 2009 WL 3353300, at *1.  The application specifically stated that "my employment will begin on the first day of my first position."  *Id.*  During her employment with defendant, Plaintiff attended an additional four interviews with three of defendant's customers.  *Id.*  The court also determined that plaintiff's travel time to and from the interviews was not compensable because defendant "did not control the manner in which Plaintiff traveled to and from the interviews."  *Id.* at *5. Similarly, the court found that the time plaintiff spent preparing for and debriefing defendant after the interviews was also not compensable as they were "strictly voluntary and the "[t]ime spent on these activities merely made Plaintiff a better applicant, and these activities were not controlled by Defendant in the same manner as the actual interview."  *Id. at *6*

23

also alleges the Defendants scheduled interviews, prepared candidates for those interviews, imposed mandatory training and orientation on its employees, and required its temporary staffers to participate in client specific training including completion of tasks pertaining to background checks as prescribed by Defendants' clients.  [*Id.* at ¶¶ 15, 23, 25, 26, 28, 29.] Further, as to the specific circumstances surrounding his own employment, Plaintiff alleges that after being hired by Defendants in September 2013, he was notified of an assignment with Corvance.  [*Id.* at ¶¶ 32, 33.]  Plaintiff asserts that Defendants told him "he was required to present himself at Corvance's office.  Plaintiff presented at Corvance's office where he participated in a group interview, signed papers, took pictures for an identification badge, meet with Corvance personnel to discuss Corvance's polices, and filled out documents related to a background check" without being compensated for any of the time spent "in the interviews, meetings, conversations, and/or orientations with Defendants or Corvance."  [*Id.* at ¶ 33.]

The Court concludes that these alleged facts, taken as true, show Plaintiff was an employee of Defendants.[15]  *See Betancourt v. Advantage Human Resourcing, Inc.,* Case No. 14-cv-01788-JST, 2014 WL 4365074, at * 4(N.D. Cal. Sept. 3, 2014) (allegations

---

[15] Defendant Huyssen moves separately to dismiss the California Labor Code Claims against in that are based on alter ego theories.  [Doc, No. 9-1 at 29.]  But, Plaintiff has alleged that the SAC alleges a joint employment relationship between Defendants, asserting that each Defendant "was the agent, joint employer, alter ego, and/or joint venture of, or working in concert with each of the other co-defendants and was acting within the course and scope of such agency, joint employment, joint venture, or concerted activity.  To the extent said acts, conduct, and omissions, were perpetrated by certain defendants, each of the remaining defendants confirmed and ratified those acts, conduct, and omissions of the acting defendant." [Doc. No. 1-12 at ¶ 15.]  Plaintiff also alleges that Defendants "have directly or indirectly or through an agent or representative exercised control over the wages, hours and/or working conditions of Plaintiff…"  [*Id.* at ¶ 20.]  Further, Plaintiff alleged that Defendants jointly "managed, directed, and controlled the operations at their locations and dictated the common employment policies applicable to Defendants."  [*Id.* at ¶ 13.]  Upon consideration of these allegations, the Court has determined that, for pleading purposes, Plaintiff has sufficiently alleged that Huyssen was his employer.  Whether or not Plaintiff will be able to prove that Huyssen was his employer is best left for summary judgment or a jury as "[t]he precise contours of an employment relationship can only be established by a careful factual inquiry."  *Nepomuceno v. Cherokee Medical Services, LLC,* No, 13cv633 BTM (BGS), 2013 WL 5670960, at *4 (S.D. Cal. Oct. 16, 2013). Such an analysis is not appropriate at the pleading stage.

3:17-cv-00135-CAB-(JMA)

including defendant's role identifying the potential hiring entity, organizing the logistics of the interview with the customer, controlling the flow of information between the customer and temporary staffer, and prohibiting direct communication between the temporary worker and the client, were sufficiently alleged to demonstrate defendant's control over wages, hours and conditions to withstand a motion to dismiss.).  Further, the Court finds that Plaintiff has sufficiently alleged that the interviews with Defendants' clients was not a typical pre-employment interview.

At the time of his interview with Corvance, Plaintiff "alleges that he was already [Defendants'] employee, performing a task – interviewing with [Defendants'] client – that his employer required."  *Id.* at 7.  Consequently, the Court **DENIES** Defendants' motions to dismiss the second cause of action.

### 4.  Third Cause of Action for Failure to Provide Accurate Itemized Wage Statements

Defendants assert that Plaintiff's third claim fails because it is time barred, is predicated on Plaintiff's minimum wage claims, and because California Labor Code § 226(a) only requires that employers accurately describe the monies being paid at the time of each payment of wages.  [Doc. No. 9-1 at 25-27; Doc. No. 10-9 at 24-25.]  Plaintiff does not contest dismissal of the third cause of action.  [Doc. No. 16 at 18.]  Accordingly, Defendants' motions to dismiss the third cause of action are **GRANTED**.

### 5.  Fourth Cause of Action for Failure to Pay Wages Upon Termination

Defendants argue that Plaintiff's fourth claim fails because it is predicated on Plaintiff's minimum wage claims which also fails, and because a good faith dispute exists as to whether Huyssen and L.A. Leasing owed Plaintiff any wages.  [Doc. No. 9-1 at 27-28; Doc No. 10-1 at 25-26.]  As previously discussed, the Court has found that Plaintiff has sufficiently alleged a minimum wage claim, Defendants' argument for dismissal on this basis fails.

Defendants are correct that an employer is not liable for waiting penalties when a "good faith dispute" exists over the payment of wages.  California Labor Code section 203

holds an employer liable for penalties if it "willfully fails to pay" wages owed to an employee at the time he or she is discharged or quits. CAL. LAB. CODE § 203(a). "A willful failure to pay wages . . . occurs when an employer intentionally fails to pay wages to an employee when those wages are due,  However, a good faith dispute that any wages are due will preclude imposition of waiting time penalties under Section 203." Cal. Code. Regs. Tit. 8, § 13520 (2011).  In this context, willfulness "does not necessarily imply anything blamable, or any malice or wrong . . . but merely that the thing done or omitted to be done was done or omitted intentionally." *Baker v. American Horticulture Suppl, Inc.,* 186 Cal. App. 4th 1059 (2010).  A "good faith dispute . . . occurs when an employer presents a defense, based in law or fact which, if successful, would preclude any recovery on the part of the employee." *Id.*

Plaintiff alleges that upon terminating his relationship with Defendants in July 2014, "none of the unpaid wages or expense reimbursements referenced in the proceeding paragraphs were included in his final paycheck and they remain unpaid today." [Doc. No. 12-1 at ¶ 34; *see also* ¶ 93.]  Plaintiff also alleges that Defendants "knowingly, willfully, and intentionally" failed to compensate Plaintiff.  [Doc. No. 1-12 at ¶¶ 105, 106.]  These allegations sufficiently plead, for purposes of the motions to dismiss, a failure to pay all wages upon separation claim.

Having found the claim adequately pled, the Court agrees with Plaintiff that Defendants are prematurely claiming they have presented a good faith defense.  At this stage of the litigation, neither party has been given the opportunity to present evidence, nor aside from filing the motions to dismiss, have Defendants asserted any affirmative defenses.  Accordingly, the Court **DENIES** Defendants' motions to dismiss the fourth cause of action.

### 6. Fifth Cause of Action for Violation of California's Unfair Competition Law

Defendants assert that the Cause of Action fails because it is predicated on the other violations of law alleged in the SAC which also fail.  [Doc. No. 9-1 at 28, Doc. No. 10-1

26

at 26-27.]  A cause of action under the UCL must be predicated upon violations of other laws.  *Smith v. State Farm Mutual Automobile Ins. Co.,* 93 Cal. App. 4th 700, 717-718.  As discussed above, Plaintiff has adequately alleged violations of the California Labor Code and FLSA upon which to predicate his UCL claim.  As a consequence, Defendants' motions to dismiss the fifth cause of action are **DENIED**.

## IV.    Conclusion

For the reasons discussed above Defendant TemPro's motion to dismiss [Doc. No. 11] the SAC pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure is **DENIED**. Further, Defendants Huyssen and L.A. Leasing's motions to dismiss the SAC pursuant to Rule 12(b)(6) are **GRANTED IN PART AND DENIED IN PART**.  Defendants shall respond to the SAC within the limits established by the Federal Rules of Civil Procedure. The parties are directed to contact the chambers of Magistrate Judge Adler to request a Case Management Conference/Early Neutral Evaluation Conference be scheduled as soon as possible.

It is **SO ORDERED**.

Dated:  July 7, 2017

_____
Hon. Cathy Ann Bencivengo
United States District Judge

3:17-cv-00135-CAB-(JMA)